C. Dianne SHELTON and Bob
J. Shelton, Appellants,

v.

Scott SARGENT, M.D., Arlington Memorial Hospital, Arlington Cancer Center and Joshua Rettig, M.D., Appellees.

Nos. 2–03–149–CV, 2–03–150–CV, 2–03–151–CV.

Court of Appeals of Texas,
Fort Worth (2nd Dist.).

July 8, 2004.

Bob J. Shelton, Fort Worth, pro se.

Wallach, Andrews, & Stouffer, P.C., D. Michael Wallach, Forth Worth, for Appellee (Sargent).

Cantey & Hanger, L.L.P., Evelyn R. Leopold, Forth Worth, for Appellee (AMH).

Cooper & Scully, P.C., Michelle E. Robberson, Dallas, for Appellee (ACC & Rettig).

Panel A: CAYCE, C.J.; GARDNER and McCOY, JJ.

## OPINION

BOB McCOY, Justice.

### I. INTRODUCTION

In these consolidated proceedings, appellants C. Dianne Shelton and Bob J. Shelton appeal the trial court's grants of summary judgment for appellees Scott Sargent, M.D., Arlington Memorial Hospital, Arlington Cancer Center, and Joshua Rettig, M.D. We will affirm.

### II. FACTUAL BACKGROUND

On March 13, 1997, appellant Dianne Shelton underwent mammography and sonography screening of her right breast at Arlington Cancer Center ("ACC"). Radiologist Joshua Rettig, M.D. evaluated the results of these procedures, identified cysts and a "suspicious soft-tissue mass" in the breast, and recommended further assessment.[1] Surgeon Jerry Bane, M.D. per-

---

1. The Sheltons repeatedly assert that the mammogram and sonogram showed two "suspicious masses" in Mrs. Shelton's breast, one at the nine o'clock position and one at the twelve o'clock position. However, the record reflects that Dr. Rettig identified in his written review of the mammogram and sonogram an "irregular hypo-echoic soft-tissue mass" at the nine o'clock position, a "true cyst" at the twelve o'clock position, and four "aggregated

formed a biopsy of the mass at Arlington Memorial Hospital (the "Hospital") with radiologist Scott Sargent, M.D., who performed a hook wire localization procedure to pinpoint the area for biopsy. Pathology tests reported that the mass was noncancerous.

Approximately one year later, Mrs. Shelton underwent additional mammography screening at the Hospital, complaining of continued pain in one of the lumps identified as cysts in the prior year's sonogram. The Hospital's staff radiologist recommended another biopsy, which Dr. Bane performed shortly thereafter on May 27, 1998. The pathology report for this biopsy identified the tissue as infiltrating duct-cell carcinoma that required an immediate mastectomy of the entire right breast. The Sheltons sought a second opinion from surgical oncologist J. Valerie Ravan Andrews, M.D., who also advised a mastectomy. Dr. Andrews performed a modified radical mastectomy of Mrs. Shelton's right breast on June 4, 1998.

The Sheltons sued Arlington Surgical Association, Dr. Bane, ACC, Dr. Rettig, the Hospital, and Dr. Sargent on June 14, 1999, seeking compensatory and punitive damages for alleged medical negligence in the delayed diagnosis of Mrs. Shelton's breast cancer. The Sheltons' second amended petition, filed October 31, 2000, added a negligence per se theory of recovery by alleging that the defendants were negligent as a matter of law for failing to comply with the Federal Mammography Quality Standards Act of 1992[2] and the Texas Cancer Incidence Reporting Act.[3] After all appellees filed separate motions for summary judgment, the Sheltons pleaded a *res ipsa loquitur* theory of negligence in addition to their claims of negligence and negligence per se by filing their third amended petition on February 12, 2003.

In their responses to appellees' motions for summary judgment, the Sheltons requested the trial court to "take judicial notice of the Court's file as it relates to all Defendants in this matter" along with federal and state statutes and regulations relating to mammography standards and cancer registry. The Sheltons also designated evidence to support their response, including an affidavit of their expert witness, Dr. Andrews.

Appellees filed their written objections to Dr. Andrews's affidavit on February 18, 2003, and the trial court sustained these objections at the summary judgment hearing on February 20, 2003. The trial court then granted each appellee's motion for summary judgment on March 6, 2003 and severed the claims against each appellee from the rest of the case. The Sheltons subsequently sought leave to file an amended affidavit of Dr. Andrews and an affidavit of Sandra K. Garrido, a former investigator for the Food and Drug Administration. The trial court denied this request, along with the Sheltons' motion for reconsideration, on June 4, 2003. The Sheltons now appeal, contending in six is-

---

cysts" at the eleven o'clock position of the breast. Dr. Rettig's evaluation goes on to label the soft-tissue mass "suspicious," but it does not identify the "true cyst" at the twelve o'clock position as suspicious. Moreover, Dr. Rettig suggested in his report a breast scintigraphy for the nine o'clock mass and then went on to state, "*Otherwise*, there are true cysts seen at the eleven and twelve o'clock positions." [Emphasis added.] The Sheltons have not directed us to any evidence in the record showing that the mammogram and sonogram revealed that the twelve o'clock "true cyst" was a "suspicious mass."

2. 42 U.S.C.A. § 263b (2000).

3. Tex Health & Safety Code Ann. §§ 82.001–.011 (Vernon 2001).

sues that the trial court erred by excluding their expert testimony and granting summary judgment against them for lack of evidence.

## III. LAW AND APPLICATION TO FACTS

### A. Objections to Summary Judgment Evidence

■ In their second issue, the Sheltons argue that the trial court erred by striking Dr. Andrews's affidavit. One argument that the Sheltons advance in support of this issue is that the trial court sustained appellees' objections to Dr. Andrews's affidavit and other summary judgment evidence erroneously because the objections were not timely filed. The Sheltons assert that *McConnell v. Southside Independent School District,* 858 S.W.2d 337, 343 (Tex. 1993), requires appellees to file their objections at least three days prior to the summary judgment hearing. In *McConnell,* the Texas Supreme Court stated that rule 21 of the Texas Rules of Civil Procedure requires the party moving for summary judgment to file and serve any exceptions to the nonmovant's response not less than three days prior to the summary judgment hearing. *Id.* at 343 n. 7; *see* TEX.R. CIV. P. 21. A movant's exception in these circumstances is a complaint that the issues identified in the nonmovant's response as defeating summary judgment are unclear or ambiguous. *See McConnell,* 858 S.W.2d at 343.

Appellees did not file exceptions to the Sheltons' response; rather, they filed objections to the competency of the Sheltons' evidence. Rule 166a, which establishes the procedure for summary judgment proceedings, does not impose a deadline by which a movant must file its reply (including objections) to a nonmovant's response. *See* TEX.R. CIV. P. 166a(c); *Knapp v. Eppright,* 783 S.W.2d 293, 296 (Tex.App.-Houston

[14th Dist.] 1989, no writ); *Wright v. Lewis,* 777 S.W.2d 520, 522 (Tex.App.-Corpus Christi 1989, writ denied). As a result, the trial court was within its discretion to consider appellees' objections.

■ Over a month after the trial court granted appellees' motions for summary judgment, the Sheltons filed motions for leave to file Dr. Andrews's amended affidavit and Sandra K. Garrido's affidavit, which the trial court denied. The Sheltons contend that the trial court erred by refusing to consider their additional affidavits in ruling on appellees' motions for summary judgment, but they have included no citation to legal authority or a discussion of the facts with appropriate record references to support their position. We do not have a duty to perform an independent review of the record and applicable law to determine whether the error complained of occurred. *Hall v. Stephenson,* 919 S.W.2d 454, 466–67 (Tex.App.-Fort Worth 1996, writ denied). Accordingly, the Sheltons have waived this complaint, and we will not address it. *See Fredonia State Bank v. Gen. Am. Life Ins. Co.,* 881 S.W.2d 279, 284 (Tex.1994) (citing long-standing rule that a point may be waived due to inadequate briefing). We overrule this portion of the Sheltons' second issue as to all appellees.

### B. Judicial Notice of Discovery on File

■ The Sheltons argue in their third issue that the trial court erred in failing to take judicial notice of the depositions on file with the court. In their responses to appellees' motions for summary judgment, the Sheltons requested the trial court to "take judicial notice of the court's file as it relates to all Defendants in this matter." The Sheltons then went on to attach evidence to their responses, stating that they

were relying on appellees' pleadings and the attached evidence in support of their responses to the motions for summary judgment. The Sheltons now contend that the trial court should have considered various evidence in the court's file in addition to the evidence attached to their responses, including the deposition of Harry Feuerberg, M.D., even though the Sheltons attached only a few pages of Dr. Feuerberg's deposition to their responses to the Hospital's and Dr. Sargent's motions for summary judgment and did not refer to the deposition at all in support of their response to ACC and Dr. Rettig's motion for summary judgment.

■■ The Sheltons' responses to appellees' motions for summary judgment request the trial court to take judicial notice of "the Court's file." Even if depositions and other evidence are contained in the trial court's file, "a general reference to a voluminous record [that] does not direct the trial court and parties to the evidence on which the movant relies is insufficient." *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 81 (Tex.1989). The Sheltons did not cite, quote, or otherwise point out to the trial court the testimony they relied upon from Dr. Feuerberg's deposition to create a fact issue. The trial court was not required to search its file for summary judgment evidence raising a genuine issue of material fact without more specific guidance from the Sheltons. *See Blake v. Intco Invs. of Tex., Inc.*, 123 S.W.3d 521, 525 (Tex.App.-San Antonio 2003, no pet.); *see also Guthrie v. Suiter*, 934 S.W.2d 820, 826 (Tex.App.-Houston [1st Dist.] 1996, no writ) (holding that trial court did not abuse its discretion by refusing to consider a five hundred page deposition attached to the nonmovant's response when the nonmovant did not point out to the trial court where in the deposition the issues set forth

in the response were raised). We overrule the Sheltons' third issue as to all appellees.

### C. Res Ipsa Loquitur

■ In their fourth and fifth issues, the Sheltons contend that even with the trial court's striking Dr. Andrews's affidavit, the trial court erred in granting summary judgment to appellees because the doctrine of *res ipsa loquitur* and the "basic and obvious" nature of appellees' alleged negligence make expert testimony unnecessary in this case.

■ Generally, the issues of medical negligence and causation require expert testimony. *Arlington Mem'l Hosp. Found., Inc. v. Baird*, 991 S.W.2d 918, 922 (Tex.App.-Fort Worth 1999, pet. denied). *Res ipsa loquitur* applies when the injury is a type that would not ordinarily occur in the absence of negligence and when the instrumentality causing the injury was under the defendant's management and control. *Haddock v. Arnspiger*, 793 S.W.2d 948, 950 (Tex.1990). *Res ipsa loquitur* is generally inapplicable to medical malpractice cases except those in which the nature of the alleged malpractice is plainly within the common knowledge of laymen, making expert testimony unnecessary. *Id.* at 951. Examples of such cases include negligence in the use of mechanical instruments, operating on the wrong portion of the body, or leaving surgical instruments or sponges within the body. *Id.*

In *Odak v. Arlington Memorial Hospital Foundation*, 934 S.W.2d 868, 873 (Tex. App.-Fort Worth 1996, writ denied), the plaintiff's newborn child suffered swelling and burns while in the defendant hospital's nursery, allegedly from an intravenous medication. The plaintiff argued that *res ipsa loquitur* applied to her case because it is commonly known that infants do not suffer chemical burns while in a hospital nursery. *Id.* We rejected this argument,

stating that the relevant inquiry was not whether an injury should occur under a given set of circumstances but instead whether the proper performance of the medical procedure is commonly known. *Id.* Because the proper use of an intravenous needle on an infant is not within the common knowledge of a layperson, we held that expert testimony of negligence was necessary and that *res ipsa loquitur* did not apply. *Id.*

■ In this case, the Sheltons argue that a layperson would understand that a biopsy should be performed when a mammogram identifies a "suspicious site" and that a physician and hospital should follow their own policies and procedures before determining that a "suspicious site" is not cancerous. Under *Odak*, however, this is not the relevant inquiry; instead, the relevant inquiry is whether the proper performance of cancer-diagnosing procedures is within the common knowledge of a layperson. *See id.* Medical decisions about performing and interpreting mammograms, sonograms, biopsies, and other diagnostic procedures require professional training and are not common knowledge. Similarly, the content of hospital policies and their underlying purposes and rationale are not commonly known by the average layperson. Consequently, *res ipsa loquitur* does not apply to the Sheltons' case, and expert testimony of appellees' negligence was necessary to survive a no-evidence motion for summary judgment. *See id.; see also Haddock*, 793 S.W.2d at 954 (holding *res ipsa loquitur* inapplicable to medical malpractice case involving use of sophisticated medical instruments and procedures not within the common knowledge of laypersons); *Denton Reg'l Med. Ctr. v. LaCroix*, 947 S.W.2d 941, 950–51 (Tex.App.-Fort Worth 1997, writ denied) (requiring medical expert testimony of standard of care applicable to hospitals where the underlying issue involved the performance of medical procedures).

■ Finally, the Sheltons argue that the trial court improperly granted summary judgment on all their claims because appellees did not amend their motions for summary judgment to address the Sheltons' third amended petition and its theory of *res ipsa loquitur,* which the Sheltons filed just eight days before the summary judgment hearing. Generally, a court may not grant judgment on a cause of action not addressed in a summary judgment proceeding. *Chessher v. S.W. Bell Tel. Co.,* 658 S.W.2d 563, 564 (Tex.1983). When the amended petition merely reiterates the same essential elements of the previously pleaded causes of action in another fashion, however, the existing motion for summary judgment will cover these new variations. *Lampasas v. Spring Ctr., Inc.,* 988 S.W.2d 428, 437 (Tex.App.-Houston [14th Dist.] 1999, no pet.).

Here, the Sheltons claim that the trial court's summary judgments in favor of appellees could not have disposed of their *res ipsa loquitur* claim. But *res ipsa loquitur* is merely a rule of evidence by which a jury may infer negligence; it is not a separate cause of action apart from negligence. *Haddock,* 793 S.W.2d at 950. Therefore, the *res ipsa loquitur* theory raised in the Sheltons' third amended petition was merely another manner of presenting their negligence cause of action. Because appellees' summary judgment motions already addressed the Sheltons' negligence cause of action, they appropriately encompassed the *res ipsa loquitur* theory as well. *See Allen v. Albin,* 97 S.W.3d 655, 669 (Tex.App.-Waco 2002, no pet.) (holding that movant's failure to specifically address plaintiff's theory of *res ipsa loquitur* in no-evidence motion for summary judgment did not require reversal of summary judgment granted on plaintiff's negligence

cause of action); *Lampasas,* 988 S.W.2d at 437 (holding that plaintiff's amended petition filed after motion for summary judgment was adequately covered by the summary judgment motion because amended petition merely provided new theories of the original negligence cause of action). We overrule the Sheltons' fourth and fifth issues as to all appellees.

### D. Negligence Per Se

In their sixth issue, the Sheltons argue that the trial court erred in "failing to recognize the negligence committed by the Defendants with regard to the Mammography Quality Standards Act and its state counterpart." The Sheltons contend that these statutes and their associated regulations establish cancer reporting and follow-up procedures and that appellees' alleged violations of the statutes and regulations constituted negligence as a matter of law.

In a medical malpractice case, the plaintiff bears the burden of proving that the health care provider undertook a mode or form of treatment that a reasonable and prudent member of the medical profession would not have undertaken under the same or similar circumstances. *Hood v. Phillips,* 554 S.W.2d 160, 165 (Tex.1977). Unless *res ipsa loquitur* applies, expert testimony is required to meet this burden of proof. *See id.* at 165–66. Because the Sheltons did not demonstrate that *res ipsa loquitur* applies to their claims, they cannot circumvent the requirement of expert testimony by merely substituting evidence of violation of a statute. *See Pack v. Crossroads, Inc.,* 53 S.W.3d 492, 509 (Tex. App.-Fort Worth 2001, pet. denied) (holding that breach of statute cannot be used as basis for negligence per se claim in a medical malpractice case because expert testimony is required to prove a cause of action for medical malpractice). We over-

rule the Sheltons' sixth issue as to all appellees. Having overruled issues three, four, five, six, and part of issue two as to all appellees, we now examine the Sheltons' remaining issues against each appellee individually.

### E. Arlington Memorial Hospital

The Hospital filed its no-evidence motion for summary judgment that forms the basis for this appeal on December 13, 2002, arguing that the Sheltons had produced no evidence of several essential elements of their negligence and negligence per se claims, including evidence of the standard of care applicable to the Hospital and evidence of causation.

#### 1. *Standard of Care*

A hospital may be liable for injuries arising from the negligent performance of a duty that the hospital owes directly to the patient. *LaCroix,* 947 S.W.2d at 950. Before a fact finder can consider whether a hospital's conduct is negligent, however, the plaintiff must first establish the standard of care. *Id.* The standard of care that a hospital is required to use in diagnosing cancer is that which a hospital of ordinary prudence would have used under the same or similar circumstances. *See id.*

In their second issue, the Sheltons complain that the trial court erred in striking Dr. Andrews's affidavit. In addition to arguing that the Hospital's objections to the affidavit were not timely filed, *see supra* Part III.A., the Sheltons assert that the Hospital's objections to Dr. Andrews's affidavit were without merit. The Hospital objected to the affidavit on the grounds that Dr. Andrews was not qualified to submit an expert opinion relating to the Hospital's conduct and that the opinion failed to establish the standard of care applicable to the Hospital or that any violation of

such standard caused the Sheltons' injuries. The Hospital also objected to Dr. Andrews's unsworn curriculum vitae attached to the affidavit as hearsay.

 The trial court has broad discretion to determine admissibility of expert evidence, and we will not reverse the trial court's ruling absent a clear abuse of that discretion. *Exxon Pipeline Co. v. Zwahr,* 88 S.W.3d 623, 629 (Tex.2002). To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles—in other words, whether the act was arbitrary or unreasonable. *See Carpenter v. Cimarron Hydrocarbons Corp.,* 98 S.W.3d 682, 687 (Tex. 2002); *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Downer,* 701 S.W.2d at 241–42. The Sheltons, as the proponents of Dr. Andrews's expert testimony, bore the burden of establishing that Dr. Andrews has "knowledge, skill, experience, training, or education" regarding the specific issue before the court that would qualify her to give an opinion on that particular subject. TEX.R. EVID. 702; *see also Broders v. Heise,* 924 S.W.2d 148, 153 (Tex.1996).

The Sheltons claim that Dr. Andrews's experiences on tumor boards and boards and staffs of various hospitals provide her sufficient knowledge and experience to opine on the standard of care that a hospital should exercise to prevent a delayed diagnosis of cancer. However, Dr. Andrews's affidavit fails to state any knowledge that she possesses on the standard of care applicable to hospitals in cancer diagnosis. Furthermore, regardless of whether the curriculum vitae attached to the affidavit is hearsay, the curriculum vitae merely states the titles and locations of Dr. Andrews's hospital appointments without presenting the knowledge and experience that the Sheltons claim qualify her to testify on the standard of care applicable to hospitals. On this record, we cannot hold that the trial court abused its discretion by striking Dr. Andrews's affidavit. *See Broders,* 924 S.W.2d at 153; *see also Reed v. Granbury Hosp. Corp.,* 117 S.W.3d 404, 410–13 (Tex.App.-Fort Worth 2003, no pet.) (affirming trial court's striking doctors' testimony on standard of care applicable to hospitals because the record did not show that the doctors possessed any special knowledge about protocols, policies, or procedures a hospital of ordinary prudence would have had in place). We overrule the Sheltons' second issue as to the Hospital.

### 2. No–Evidence Summary Judgment

 In their first issue, the Sheltons generally assert that the trial court erred in granting the Hospital's motion for summary judgment. The Hospital's no-evidence motion for summary judgment argued that the Sheltons had produced no evidence of several essential elements of their claims. After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. TEX.R. CIV. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.; Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 207 (Tex.2002). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See* TEX.R. CIV. P.

166a(i) & cmt.; *S.W. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex.2002).

We review the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered. *Johnson*, 73 S.W.3d at 197; *Morgan v. Anthony*, 27 S.W.3d 928, 929 (Tex.2000). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex.App.-San Antonio 1998, pet. denied).

Without Dr. Andrews's affidavit, the Sheltons have no expert testimony establishing the standard of care applicable to the Hospital. Without expert testimony, the Sheltons cannot establish that the Hospital was negligent. *See Baird*, 991 S.W.2d at 922 (stating that expert testimony is required on the issue of medical negligence). Because *res ipsa loquitur* does not apply to the Sheltons' claims against the Hospital, any alleged failure by the Hospital to follow its policies and procedures is no evidence of negligence in the absence of expert testimony. *See id.* at 921–22 (citing *Hood v. Phillips*, 554 S.W.2d 160, 165–66 (Tex.1977)).

The Sheltons assert that they need no medical expert testimony to defeat summary judgment because appellees did not "meet their threshold requirement" of establishing that they complied with the applicable standard of care and the Mammography Quality Standards Act and its state counterpart. Under the no-evidence summary judgment standard, however, appellees were not required to produce any evidence at all; rather, the Sheltons bore the burden of producing more than a scintilla of probative evidence to raise a genuine issue of material fact on the elements challenged in appellees' summary judgment motions, including the element of the standard of care challenged in the Hospital's motion. *See S.W. Elec. Power Co.*, 73 S.W.3d at 215.

Because *res ipsa loquitur* did not apply to the Sheltons' claims, the exclusion of Dr. Andrews's affidavit meant that the Sheltons had no evidence of the standard of care, an essential element of their negligence cause of action. Any evidence of a violation of the Mammography Quality Standards Act or any other law could not substitute for the requirement of medical expert testimony of negligence, which was absent from the Sheltons' case against the Hospital. Accordingly, the trial court did not err in awarding summary judgment to the Hospital. *See* Tex.R. Civ. P. 166a(i). We overrule the Sheltons' first issue.

Having overruled all the Sheltons' issues in their appeal against the Hospital, we need not address the Hospital's conditional cross-point on appeal. *See* Tex.R.App. P. 47.1 (stating that appellate court need only address issues necessary to final disposition of appeal). We affirm the trial court's grant of summary judgment in favor of the Hospital.

### F. Dr. Sargent

Dr. Sargent filed his no-evidence motion for summary judgment on January 3, 2002, asserting that the Sheltons had produced no evidence of two elements of their negligence claim: breach of the standard of care and causation. The trial court's order specified that it granted Dr. Sargent's motion because the Sheltons had failed to produce competent summary judgment evidence supporting the causation element of their claims against Dr. Sargent.

#### 1. Sargent's Objection to Expert Affidavit

The Sheltons argue in their second issue that the trial court erred in striking Dr.

Andrews's affidavit. In addition to arguing that Dr. Sargent's objections to the affidavit were not timely filed, *see supra* Part III.A., the Sheltons assert that the Hospital's objections to Dr. Andrews's affidavit were without merit. Dr. Sargent objected to the affidavit on the grounds that it (1) failed to establish that Dr. Andrews, a surgical oncologist, was qualified to render an expert opinion regarding the care provided by Dr. Sargent, a radiologist; (2) failed to state Dr. Andrews's opinion on the applicable standard of care; (3) failed to set forth the foundation of the opinions; (4) failed to base Dr. Andrews's opinion on a standard of reasonable medical probability; and (5) failed to express an opinion regarding causation. The trial court sustained Dr. Sargent's objection and struck Dr. Andrews's affidavit. We review the exclusion of expert testimony under an abuse of discretion standard. *Exxon,* 88 S.W.3d at 629; *Broders,* 924 S.W.2d at 151.

### a. Witness qualifications

■ To qualify as an expert witness in a medical malpractice case, the expert need not necessarily be a specialist in the field of medicine at issue. *Broders,* 924 S.W.2d at 153. Therefore, Dr. Andrews is not automatically disqualified from testifying about radiological care and treatment in the case against Dr. Sargent, a radiologist, merely because she is a surgical oncologist and not a radiologist. However, the Sheltons, as proponents of the expert testimony, must establish that Dr. Andrews has "knowledge, skill, experience, training, or education" regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject. TEX.R. EVID. 702; *Broders,* 924 S.W.2d at 153.

The Sheltons did not establish that Dr. Andrews's level of familiarity with radiology meets this standard. While Dr. Andrews opined that Dr. Sargent should have retaken x-ray films of the hook wire localization and should have followed up with the other medical care providers on the negative pathology report, the record is devoid of any indication that she possessed any expertise or training in the field of radiology that would qualify her to make these opinions. On this record, the Sheltons did not provide the trial court with the necessary information to ensure "that those who purport to be experts truly have expertise concerning the actual subject about which they are offering an opinion." *Broders,* 924 S.W.2d at 152.

### b. Opinion on standard of care

■ Dr. Sargent also objected to Dr. Andrews's affidavit on the ground that it failed to state her opinion as to the applicable standard of care. While the plaintiff bears the burden of establishing the standard of care in a medical malpractice case, a failure of the plaintiff's expert to define the standard of care does not necessarily require the trial court to strike the expert's affidavit: "Such a failure may ultimately go to the weight or value of the expert's testimony to the fact finder, but not to its admissibility, or to the qualifications of the witness to testify." *Warner v. Hurt,* 834 S.W.2d 404, 407 (Tex.App.-Houston [14th Dist.] 1992, no writ). Therefore, the trial court was not required to strike Dr. Andrews's affidavit on this ground.

### c. Foundation for reliability of opinion

■ Dr. Sargent further complained that Dr. Andrews's affidavit set forth conclusory opinions without any supporting basis or foundation explaining how she arrived at her opinions regarding the care provided by Dr. Sargent. A statement of an expert witness that has no facts to support the expert's conclusions is insufficient to create a question of fact to defeat summary judgment because it is not credi-

ble or susceptible to being readily controverted. *McIntyre v. Ramirez*, 109 S.W.3d 741, 749 (Tex.2003); *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex.1996). Therefore, the expert affidavit must show the specific facts and reasoning on which the opinion is based, and it must link its conclusions to the facts. *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex.1999).

Here, Dr. Andrews's affidavit states that Dr. Sargent's failures to take a follow-up mammogram three to six months after the biopsy, to require the Hospital's personnel to follow policies and procedures, to retake films of the needle localization and hook wire placement, and to correlate the pathology report with the mammogram were below the standard of care. However, Dr. Andrews did not refer to any recognized studies or otherwise explain the basis for her opinion that a mastectomy and broad field radiation therapy could have been avoided. She did not refer to any scientific journals or texts, which might provide some basis for her conclusion that a lumpectomy "would have been a good option" for treating Mrs. Shelton's breast cancer. Dr. Andrews did not explain why a follow-up mammogram taken a few months after the biopsy would have been appropriate, why retaking the films was medically necessary, or why correlation of the pathology report with the mammogram was needed.

Because Dr. Andrews provided no facts, studies, or any type of explanation to support her conclusion that these actions would have led to an earlier cancer diagnosis, her affidavit lacks foundation and is conclusory. Therefore, the opinions expressed do not provide any evidence that will defeat summary judgment. *See Blan v. Ali*, 7 S.W.3d 741, 748 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (holding affidavit that failed to explain how different treatment would have produced better outcome was insufficient to create a fact

issue); *Jordan v. Geigy Pharms., Inc.*, 848 S.W.2d 176, 179–80 (Tex.App.-Fort Worth 1992, no writ) (holding affidavit insufficient to raise a fact issue where it did not identify medical literature or other information upon which the expert's opinion relied).

d. Reasonable medical probability; causation

■■■■ Dr. Sargent's objection also asserted that Dr. Andrews did not base her opinion on a reasonable medical probability and that she rendered no opinion on any causal connection between Dr. Sargent's alleged negligence and Mrs. Shelton's injury. A plaintiff cannot establish causation without showing a causal connection between the negligent act and the injury based on "reasonable medical probability." *Duff v. Yelin*, 751 S.W.2d 175, 176 (Tex. 1988); *Bottoms v. Smith*, 923 S.W.2d 247, 251 (Tex.App.-Houston [14th Dist.] 1996, no writ).

Dr. Andrews's affidavit does state with a reasonable medical probability that had the breast cancer been diagnosed earlier, Mrs. Shelton "more likely than not" could have been treated with a less invasive lumpectomy. The affidavit also states that the surgeon and radiologists' failure to perform a follow-up mammogram three to six months after the biopsy "clearly led to an unreasonable delay in diagnosis." Again, however, the affidavit provides no basis or foundation for any of these assertions. Because Dr. Andrews failed to state facts or studies to support her conclusion that Mrs. Shelton would have avoided a mastectomy with a follow-up mammogram, her affidavit lacks foundation and is conclusory. This conclusory affidavit is insufficient to raise a fact issue on causation. *See Ryland Group*, 924 S.W.2d at 122 (holding that "[c]onclusory affidavits are not enough to raise fact issues"); *Hodgkins v. Bryan*, 99 S.W.3d 669, 674–75 (Tex.App.-Houston [14th Dist.]

2003, no pet.) (holding that an expert's conclusory statements submitted in an affidavit did not constitute competent summary judgment evidence).

On this record, we cannot hold that the trial court abused its discretion by striking Dr. Andrews's affidavit. *See McIntyre,* 109 S.W.3d at 750 (holding that trial court did not abuse its discretion in striking expert affidavit in medical malpractice case because affidavit contained no supporting facts or rationale for its conclusions); *Broders,* 924 S.W.2d at 152 (holding that a doctor who specialized in emergency medicine could not testify about treatment of brain injuries because proponents of his testimony did not establish that he possessed the requisite knowledge, skill, experience, training, or education on the issue). We overrule the Sheltons' second issue as to Dr. Sargent.

### 2. *No–Evidence Summary Judgment*

In their first issue, the Sheltons generally assert that the trial court erred in granting Dr. Sargent's motion for summary judgment. In a medical malpractice case, a plaintiff must prove that the negligence of the defendant physician proximately caused the injury alleged. *Hart v. Van Zandt,* 399 S.W.2d 791, 792 (Tex.1965). The ultimate standard of proof on the causation issue is "whether, by a preponderance of the evidence, the negligent act or omission is shown to be a substantial factor in bringing about the harm and without which the harm would not have occurred." *Park Place Hosp. v. Estate of Milo,* 909 S.W.2d 508, 511 (Tex. 1995). The trier of fact may decide the issue of causation in medical malpractice cases based upon (1) scientific principles provided by expert testimony allowing the fact finder to establish a traceable chain of causation from the condition back to the event; (2) a probable causal relationship as articulated by expert testimony; or (3)

general experience and common sense from which reasonable persons can determine causation. *Marvelli v. Alston,* 100 S.W.3d 460, 470 (Tex.App.-Fort Worth 2003, pet. denied) (citing *Parker v. Employers Mut. Liab. Ins. Co.,* 440 S.W.2d 43, 46 (Tex.1969)).

Because we have determined that the trial court did not abuse its discretion in striking Dr. Andrews's affidavit, the Sheltons have no expert affidavit to provide the scientific principles or probable causal relationship necessary to raise an issue of fact on the essential element of causation. The Sheltons argue that "letter and deposition testimony" of Dr. Feuerberg also provided evidence of Dr. Sargent's negligence and should have precluded the no-evidence summary judgment. No letter from Dr. Feuerberg was cited in any response to appellees' motions for summary judgment, and the trial court was not required to search the record for it. *See supra* Part III.B. The only testimony of Dr. Feuerberg referenced in the Sheltons' response to Dr. Sargent's motion for summary judgment that addresses causation is Dr. Feuerberg's statement that Dr. Sargent's use of ultrasound guidance instead of mammography in performing the hook wire localization procedure on Mrs. Shelton's breast *"may* very well be the reason for what has occurred." [Emphasis added.] This is far from the standard of "reasonable medical probability" required to establish a causal connection between Dr. Sargent's hook wire localization and Mrs. Shelton's delayed cancer diagnosis. *See Duff,* 751 S.W.2d at 176. Furthermore, because Dr. Feuerberg's testimony provides no basis or foundation for this conclusory assertion, it is insufficient to raise an issue of fact on this element of the Sheltons' negligence claims. *See Ryland Group,* 924 S.W.2d at 122. Consequently,

Dr. Feuerberg's deposition testimony offers no evidence of causation.

▮ Next, the Sheltons argue that the acts of all health care providers in this case were so obviously negligent that they raise questions of fact even in the absence of Dr. Andrews's expert affidavit. It is true that even without expert testimony, the trier of fact may decide the issue of causation based upon general experience and common sense from which reasonable persons can determine causation. *Marvelli*, 100 S.W.3d at 470. For example, in *Manax v. Ballew*, 797 S.W.2d 71 (Tex. App.-Waco 1990, writ denied), no expert testimony on causation was needed when a doctor operated on the wrong portion of the plaintiff's back to remove a tumor because "[t]he fact of resulting injury ... by the surgical incision was indisputable." *Id.* at 73.

This case, however, presents issues of causation that cannot be resolved by a layperson's common sense. The Sheltons contend in their brief that two "suspicious masses" were identified in the original mammogram and sonogram, only one of the suspicious masses was biopsied, and the unbiopsied mass eventually was diagnosed as cancerous. However, there is no evidence supporting this contention in any of the evidence the Sheltons designated in their responses to appellees' motions for summary judgment. A layperson's general experience does not include knowing how to diagnose cancer, how to identify "suspicious masses" that should be biopsied, or how to determine whether a portion of Mrs. Shelton's breast that was not localized for biopsy by Dr. Sargent developed into cancer. Consequently, the Sheltons produced no evidence of causation. As *res ipsa loquitur* and negligence per se do not apply, *see supra* Part III.C.-D., we overrule the Sheltons' first issue.

Having overruled all the Sheltons' issues in their appeal against Dr. Sargent, we need not address Dr. Sargent's two cross-points on appeal. *See* Tex.R.App. P. 47.1. We affirm the trial court's grant of summary judgment in favor of Dr. Sargent.

## G. ACC and Dr. Rettig

▮ ACC and Dr. Rettig filed two motions for summary judgment. Their first motion, filed December 6, 1999, argued that the statute of limitations had run on the Sheltons' claims because they last treated Mrs. Shelton on March 13, 1997, but the Sheltons did not file suit until June 14, 1999—more than two years after the last date of treatment. The trial court granted this first motion for summary judgment on May 5, 2000 but did not sever the claims against ACC and Dr. Rettig from the rest of the case.

Because the trial court had not severed ACC and Dr. Rettig after granting the first summary judgment, ACC and Dr. Rettig filed a second summary judgment motion on January 29, 2002, after the Sheltons amended their petition to add their negligence per se theory of recovery. ACC and Dr. Rettig again asserted a statute of limitations defense as a ground for summary judgment. The Sheltons then added their *res ipsa loquitur* theory of negligence by filing their third amended petition on February 12, 2003. The trial court granted summary judgment for ACC and Dr. Rettig and severed all claims against them on March 6, 2003.

On appeal, the Sheltons do not discuss the limitations arguments raised by ACC and Dr. Rettig in their summary judgment motions. The Sheltons maintain that their first issue, which generally challenges the trial court's grant of summary judgment for appellees, is broad enough to encompass the limitations grounds, but their brief contains no argument, authorities, or citations to the record that address the limitations argument.

An appellate contention must be supported by argument and authorities to be properly before this court. *See* Tex.R.App. P. 38.1(h); *Karen Corp. v. The Burlington N. & Santa Fe Ry. Co.*, 107 S.W.3d 118, 125 (Tex.App.-Fort Worth 2003, pet. denied). We do not have a duty to perform an independent review of the record and applicable law to determine whether the error complained of occurred. *See Hall*, 919 S.W.2d at 466–67. The Sheltons do not challenge the statute of limitations grounds asserted by ACC and Dr. Rettig in both of their motions for summary judgment. Accordingly, we must affirm the summary judgment for ACC and Dr. Rettig on this unchallenged ground. *See Wrenn v. G.A.T.X. Logistics, Inc.*, 73 S.W.3d 489, 493 (Tex.App.-Fort Worth 2002, no pet.) (holding that when summary judgment rests on more than one ground, appellant must challenge each ground on appeal, or judgment will be affirmed on ground about which no complaint is made). We overrule the Sheltons' first issue as to ACC and Dr. Rettig.

In their second issue, the Sheltons complain that the trial court erred by striking Dr. Andrews's affidavit. Because we have determined that summary judgment for ACC and Dr. Rettig should be affirmed on statute of limitations grounds, we need not reach this issue. Likewise, we need not address ACC and Dr. Rettig's conditional cross-issue on appeal. *See* Tex.R.App. P. 47.1. We affirm the trial court's grant of summary judgment in favor of ACC and Dr. Rettig.

## IV. CONCLUSION

Having overruled the Sheltons' issues against each appellee, we affirm the trial court's judgments.