COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-252-CV
 
 
 
IN 
THE INTEREST OF M.G. AND J.J.S.
 
 
------------
 
FROM 
THE 367TH DISTRICT COURT OF DENTON COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        This 
is a termination of parental rights appeal.  Following a bench trial on 
March 29-31, 2004, the trial court terminated the parental rights of Appellant 
Jaylene G. in her children M.G. and J.J.S.[2]  In 
two points, Appellant argues 1) the evidence is factually insufficient to 
support termination of her parental rights and 2) the trial court abused its 
discretion by permitting hearsay testimony from an expert witness. We will 
affirm.
Background 
Facts
        Appellant 
Jaylene G. is the mother of M.G. born May 15, 1988 and J.J.S. born January 1, 
1992. Steve A. is M.G.’s biological father and Doug S. is J.J.S.’s 
biological father. Appellant was previously married to Jimmy G.
        During 
the relevant time frame, Michelle Marter lived across the street from Appellant, 
and Maria Harris, who was friends with Marter, lived a few streets over from 
Appellant. Harris was at Marter’s house the day TDPRS was notified about 
M.G.’s and J.J.S.’s abuse. Harris testified that she saw Appellant come 
outside and start yelling at M.G. to come inside the house. She then heard six 
to seven banging type noises. Afterwards, Appellant left to go to work and M.G. 
walked over to Marter’s house. Harris testified that when she asked M.G. about 
the banging noises, he told her that his mother had taken his head and banged it 
up against the counter. Harris also testified that previous to that date she had 
seen M.G. with at least two black eyes. M.G. contacted the Texas Department of 
Protective and Regulatory Services[3] (TDPRS) with 
Marter’s help, regarding the physical abuse of the children.  The 
following day TDPRS came to Marter’s house to investigate the call.  On 
October 25, 2002, TDPRS filed an emergency petition to have the children removed 
from Appellant’s home.  The court found that there was a continuing 
danger to the children’s physical health or safety and that leaving the 
children in Appellant’s home would be contrary to the children’s 
welfare.  Beginning on November 15, 2002, both M.G. and J.J.S. began living 
with a licensed foster parent.
        TDPRS 
appointed Alicia Alexander-Bird as the therapist for M.G. and J.J.S. During her 
initial sessions with each boy, she learned that the boys were abused on a 
“regular basis” starting around the age of four or five. J.J.S. stated that 
his mother would hit him in the head or face and that when he would fall to the 
ground she would kick him in the ribs or stomach. He also said that Appellant 
punched M.G. in the face and kicked him when he fell to the ground.
        M.G. 
testified that he received “lots of beatings” when his mother would get 
“raged and furious and just start hitting and swinging.” J.J.S. did not 
testify in open court, but did speak to the court privately in the judge’s 
chambers with only the judge and court reporter present. While in the judge’s 
chambers, J.J.S. told the court that his mother “used to hit us and kick us, 
like over small things, like when we’d drink a Dr. Pepper and it was the last 
one” and that the hitting had taken place for years. Also, in his videotaped 
interview with TDPRS, J.J.S. stated that Appellant would hit him and his brother 
in the face and slap them around.
        Both 
boys related numerous specific instances when Appellant subjected one or both of 
them to physical or emotional abuse. M.G. testified that when he was in the 
first grade, he had difficulty learning his alphabet. He stated that Appellant 
woke him up in the middle of the night and screamed at him to say his ABCs. He 
testified that afterwards she went into the living room and pretended to stab 
herself with a knife. M.G. said he was scared and started to run out the front 
door to get help when Appellant stopped him, and told him she was not hurt. 
During Appellant’s testimony, she denied waking M.G. up in the middle of the 
night and testified that the stabbing incident was a different time when she and 
the children were playing dead.
        M.G. 
also recalled an incident when Appellant picked up J.J.S. by the neck causing 
him to choke. Appellant denied that this ever happened. M.G. testified that on 
another occasion Appellant had instructed him to remove his eyeglasses and then 
began to hit and kick him. M.G. stated that he tried to pull his knees up to his 
chest to protect himself but that he still suffered a black eye.
        About 
two weeks before TDPRS was contacted, M.G. testified that Appellant struck him 
in the face with her closed hand. His eye was swollen and a bruise had started 
to show on his face. When M.G. went to see an eye doctor because of the injury, 
Appellant told M.G. to tell the doctor that the injury happened when he jumped 
on his brother in the swimming pool and hit his brother’s heel. J.J.S. 
discussed this incident in his videotaped interview with TDPRS and when he spoke 
with the trial judge. He stated that Appellant told him and his brother to say 
that M.G.’s eye was injured when it made contact with J.J.S.’s heel in the 
swimming pool. During Appellant’s testimony, she admitted to slapping M.G. on 
the cheek on this particular occasion but said that the eye injury happened 
later and that M.G. had lied during his testimony. She also stated that she 
never told her children to lie about this incident.
        M.G. 
testified that the incident that caused him to call TDPRS occurred because his 
mother was upset that one of his friends drank two of Appellant’s Dr. Peppers. 
M.G. stated that Appellant yelled at him and started banging his head into a 
kitchen cabinet. In her testimony Appellant claimed that she never touched M.G. 
Instead, she said that she pointed a fork at him several times and that M.G. 
would jerk backwards, but that she had no knowledge of him hitting his head.
        Both 
boys testified that Appellant had left them alone on several occasions and that 
they were scared to be home alone. They also stated that they would sometimes 
call Appellant and ask her to come home but that she told them no. Appellant 
testified that she only left her children home alone overnight one time and that 
it was when M.G. was fourteen-years-old and old enough to take care of J.J.S.
        During 
Appellant’s testimony, she admitted that she allowed M.G. to stay with his 
biological father even though he had allegedly raped Appellant and even though 
he told Appellant that he had sodomized one of his children. Furthermore, Carena 
Lacy, one of M.G.’s teachers, testified that on one occasion he came to school 
with a black eye and told her that he got it when he dived into the swimming 
pool and hit his brother’s heel. She also testified that M.G. came to school 
with another black eye about one month later.
        Appellant 
called numerous witnesses who testified that she was a good, loving mother. 
Appellant also points out that many of the witnesses testified that the children 
had problems with lying and stealing. However, there was expert evidence that 
lying and stealing are learned behaviors. Furthermore, evidence was presented 
that Appellant had the children steal food from the grocery store. However, 
Appellant denies that she had the children steal food.
        On 
September 2, 2003, TDPRS filed a motion to set the termination hearing of the 
parent-child relationship between Appellant and M.G. and J.J.S. Following a 
bench trial, the trial judge terminated Appellant’s parental rights. On July 
30, 2004, the trial court signed an order terminating the parental rights of 
Appellant in M.G. and J.J.S. This appeal followed.
Hearsay
        In 
her second point,[4] Appellant contends that the 
expert witness, Alicia Alexander-Bird, was allowed to improperly testify to the 
hearsay statements of M.G. and J.J.S.  A trial court’s rulings in 
admitting or excluding evidence are reviewable under an abuse of discretion 
standard.  Nat’l Liab. & Fire Ins. Co. v. Allen, 15 S.W.3d 
525, 527-28 (Tex. 2000).  An appellate court must uphold the trial 
court’s evidentiary ruling if there is any legitimate basis in the record for 
the ruling.  Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35, 
43 (Tex. 1998).
        Under 
the rules of evidence, expert testimony is permitted if it will assist the trier 
of fact to understand the evidence or to determine a fact in issue.  Tex. R. Evid. 702.  A two-part test 
governs the admissibility of expert testimony: (1) the expert must be qualified; 
and (2) the testimony must be relevant and be based on a reliable 
foundation.  Helena Chem. Co. v. Wilkins, 47 S.W.3d 486, 499 (Tex. 
2001); E.I. du Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549, 556 
(Tex. 1995).  In assessing the reliability of the expert’s testimony, the 
court must determine whether “there is simply too great an analytical gap 
between the data and the opinion proffered.” Gammill v. Jack Williams 
Chevrolet, Inc., 972 S.W.2d 713, 727 (Tex. 1998) (quoting Gen. Elec. Co. 
v. Joiner, 522 U.S. 136, 145-46 (1997)).
        An 
expert may base his opinion upon facts perceived by, reviewed by, or made known 
to the expert at or before the hearing. Tex. 
R. Evid. 703. If the evidence is of a type reasonably relied upon by 
experts in the field in forming opinions, the facts or data need not be 
admissible in evidence. Id. An expert is allowed to rely on hearsay 
evidence in reaching her conclusions and may testify about the basis for her 
conclusions, subject to an objection that its probative value is outweighed by 
the risk of prejudicial harm.  Sosa ex rel. Grant v. Koshy, 961 
S.W.2d 420, 426-27 (Tex. App.—Houston [1st Dist.] 1997, pet. denied).
        In 
the present case, during the direct examination of Alexander-Bird, Appellant 
made eleven hearsay objections. The trial court informed counsel, “This 
witness is allowed to rely upon what the child told her in forming her opinion, 
and that’s true even if it contains hearsay. So if you want a running 
objection to what the child told her, I will grant you a running objection.” 
Appellant told the trial court that she wanted a running objection and made no 
further objection regarding the testimony, except for one objection based on 
speculation.
        Therefore, 
because Alexander-Bird’s testimony was based on sources reasonably relied upon 
by experts in her field, the trial court did not abuse its discretion by 
concluding that her testimony fell within rules 702 and 703. See Tex. R. Evid. 702, 703. We overrule 
Appellant’s second point.
Factual 
Sufficiency
Burden of Proof in Termination Proceedings
        A 
parent's rights to "the 
companionship, care, custody, and management" 
of his or her children are constitutional interests "far more precious than any property 
right." Santosky v. Kramer, 
455 U.S. 745, 758-59, 102 S. Ct. 1388, 1397 (1982). "While parental rights are of 
constitutional magnitude, they are not absolute. Just as it is imperative for 
courts to recognize the constitutional underpinnings of the parent-child 
relationship, it is also essential that emotional and physical interests of the 
child not be sacrificed merely to preserve that right." In re C.H., 89 S.W.3d 17, 26 
(Tex. 2002).
        In 
a termination case, the State seeks not just to limit parental rights but to end 
them permanently—to divest the parent and child of all legal rights, 
privileges, duties, and powers normally existing between them, except for the 
child's right to inherit. Tex. Fam. Code 
Ann. § 161.206(b) (Vernon Supp. 2004-05); Holick v. Smith, 685 
S.W.2d 18, 20 (Tex. 1985). We strictly scrutinize termination proceedings and 
strictly construe involuntary termination statutes in favor of the parent. Holick, 
685 S.W.2d at 20-21; In re D.T., 34 S.W.3d 625, 630 (Tex. App.—Fort 
Worth 2000, pet. denied) (op. on reh'g).
        Termination 
of parental rights is a drastic remedy and is of such weight and gravity that 
due process requires the petitioner to justify termination by clear and 
convincing evidence. Tex. Fam. Code Ann. 
§§ 161.001, 161.206(a); In re G.M., 596 S.W.2d 846, 847 (Tex. 
1980). This intermediate standard falls between the preponderance standard of 
ordinary civil proceedings and the reasonable doubt standard of criminal 
proceedings. G.M., 596 S.W.2d at 847; D.T., 34 S.W.3d at 630. It 
is defined as the "measure or degree 
of proof that will produce in the mind of the trier of fact a firm belief or 
conviction as to the truth of the allegations sought to be established." Tex. 
Fam. Code Ann. § 101.007 (Vernon 2002).
        The 
higher burden of proof in termination cases alters the appellate standard of 
factual sufficiency review. In re C.H., 89 S.W.3d 17, 25 (Tex. 2002). "[A] finding that must be based on clear 
and convincing evidence cannot be viewed on appeal the same as one that may be 
sustained on a mere preponderance." Id. 
In considering whether the evidence of termination rises to the level of being 
clear and convincing, we must determine "whether 
the evidence is such that a factfinder could reasonably form a firm belief or 
conviction" that the grounds for 
termination were proven. Id. Our inquiry here, is whether, on the entire 
record, a factfinder could reasonably form a firm conviction or belief that 
Appellant violated one of the conduct provisions of section 161.001(1) and that 
the termination of Appellant’s parental rights would be in the best interest 
of M.G. and J.J.S. See id. at 28.
Trial Court’s Findings
        The 
pertinent portions of the trial court’s findings of fact and conclusions of 
law are as follows:
[1]The 
Court finds that [M.G.] was a credible witness.
                . 
. . .
[2]The 
Court finds that [J.J.S.] was a credible reporter.
 
        [3]    The 
Court finds that Jaylene [G.] assaulted both of her children numerous times.
 
        [4]    The 
Court finds that Jaylene [G.] taught and encouraged her children to steal items 
from retail stores.
 
        [5]    The 
Court finds that Jaylene [G.] left her children alone overnight on several 
occasions without appropriate supervision, causing serious emotional distress to 
each child and creating an unreasonable risk of physical harm.
 
                . 
. . .
 
        [6]    The 
Court finds that even though Jaylene [G.] participated in the services provided 
by the Department of Family and Protective Services, she did not benefit from 
those services and therefore allowing the children to return to her custody was 
likely to result in serous emotional or physical damage to the children.
 
                . 
. . .
 
        [7]    The 
Court finds that Alicia Byrd-Alexander[5] was a 
credible witness.
 
        [8]    The 
Court finds that Alicia Byrd-Alexander was the therapist for both children and 
that she corroborated the statements made by the children as to the way they 
were treated by their mother. She also rendered her professional opinion that 
the children had suffered physical and emotional damage as a result of their 
mother’s behavior, and that returning them to their mother would likely result 
in serious emotional or physical damage to them.
 
        [9]    The 
Court finds that Lori Christenson . . . was a credible witness.
 
                . 
. . .
 
        [10]  The 
Court finds beyond a reasonable doubt that Jaylene [G.] knowingly placed or 
knowingly allowed the children to remain in conditions or surroundings which 
endangered the physical or emotional well-being of the children.
 
        [11]  The 
Court finds beyond a reasonable doubt that Jaylene [G.] engaged in conduct or 
knowingly placed the children with persons who engaged in conduct which 
endangered the physical or emotional well-being of the children.
 
        [12]  The 
Court finds beyond a reasonable doubt that the continued custody of the children 
with Jaylene[G.] is likely to result in serious emotional or physical damage to 
the children.
 
        [13]  The 
Court finds that it is in the best interest of the children that the parental 
rights of Jaylene [G]. be terminated.

Texas Family Code Section 161.001(1)(E)
        Under 
section 161.001(1)(E) of the Texas Family Code, Appellant’s parental rights 
could properly have been terminated if the trial court found by clear and 
convincing evidence that she "engaged in conduct or knowingly placed the 
[children] with persons who engaged in conduct which endangers the physical or 
emotional well-being of the child." Tex. 
Fam. Code Ann. § 161.001(1)(E). Under this section, the term 
"endanger" means to expose to loss or injury or to jeopardize. In 
re M.C., 917 S.W.2d 268, 269 (Tex. 1996). There must be evidence of 
endangerment to the child's physical or emotional well-being as the direct 
result of the parent's conduct. In re R.D., 955 S.W.2d 364, 367-68 (Tex. 
App.—San Antonio 1997, pet. denied). Subsection (E) requires a "course of 
conduct." Id. Accordingly, when analyzing a trial court’s findings 
pursuant to subsection (E), we must determine whether sufficient evidence exists 
that the endangerment of the child's physical well-being was the direct result 
of the parent's conduct, including acts, omissions, or failures to act. In re 
D.M., 58 S.W.3d 801, 811-12 (Tex. App.—Fort Worth 2001, no pet.). 
Termination under section 161.001(1)(E) must be based on more than a single act 
or omission; a voluntary, deliberate, and conscious course of conduct by the 
parent is required. Tex. Fam. Code Ann. 
§ 161.001(1)(E); D.T., 34 S.W.3d at 634; In re K.M.M., 993 S.W.2d 
225, 228 (Tex. App.—Eastland 1999, no pet.).
        The 
record recites a pattern of physical and emotional abuse by Appellant. In fact, 
our review of the record discloses ample evidence to support the trial court’s 
findings. Both boys, along with numerous other witnesses, recounted several 
incidents of abuse. Moreover, M.G.’s and J.J.S.’s testimony about particular 
instances of abuse were supported by other witnesses’ testimony. For example, 
on the date TDPRS was called, M.G. testified that Appellant banged his head into 
the kitchen cabinets numerous times. Although Harris did not actually see 
Appellant bang M.G.’s head into the cabinet, she testified that Appellant was 
screaming and yelling at M.G. and that she heard six to seven loud bangs when 
M.G. went inside his house. She also testified that when M.G. came back out a 
few minutes later to take out the trash, he was staggering and his face was red 
and swollen. Harris and Lacy testified that they saw M.G. with black eyes on 
more than one occasion. Additionally, there was testimony from the children, 
along with Appellant, that she had left them alone overnight. Finally, 
Alexander-Bird testified that Appellant continues to deny abusing her children. 
Appellant refuses to admit that her actions endanger the well-being of her 
children.
        The 
evidence in this case permitted the trial court to reasonably form a firm belief 
or conviction that the grounds for termination under section 161.001(1)(E) were 
proven by clear and convincing evidence. We hold that the record adequately 
supports the trial court’s findings.
        In 
the present case, the court found that Appellant had endangered the physical and 
emotional well-being of her children under subsections 161.001(1)(D) and 
161.001(1)(E). If multiple conduct grounds are alleged for termination, the 
evidence is factually sufficient if it supports just one of the alleged conduct 
grounds. In re W.J.H., 111 S.W.3d 707, 715 (Tex. App.—Fort Worth 2003, 
pet. denied). Therefore, we are not required to address whether the evidence is 
sufficient to establish termination under section 161.001(1)(D).
Best Interests
        Additionally, 
Appellant argues that termination of her parental rights would not be in the 
best interest of M.G. and J.J.S. In proceedings to terminate the parent-child 
relationship brought under section 161.001 of the family code, the petitioner 
must establish one or more of the acts or omissions enumerated under subdivision 
(1) of the statute and must also prove that termination is in the best interest 
of the child. Tex. Fam. Code Ann. 
§ 161.001; Richardson v. Green, 677 S.W.2d 497, 499 (Tex. 1984); Swate 
v. Swate, 72 S. W.3d 763, 766 (Tex. App.—Waco 2002, pet. denied). Both 
elements must be established; termination may not be based solely on the best 
interest of the child as determined by the trier of fact. Tex. Dep't of Human 
Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987). Our inquiry here is limited 
to whether, on the entire record, a factfinder could reasonably form a firm 
conviction or belief that the termination of Appellant’s parental rights would 
be in the best interest of the children. In re C.H., 89 S.W.3d 17, 28 
(Tex. 2002).
        Nonexclusive 
factors that the trier of fact in a termination case may use in determining the 
best interest of the child include:
        (1)    the 
desires of the child,
 
        (2)    the 
emotional and physical needs of the child now and in the future,
 
        (3)    the 
emotional and physical danger to the child now and in the future,
 
        (4)    the 
parental abilities of the individuals seeking custody,
 
        (5)    the 
programs available to assist these individuals to promote the best interest of 
the child,
 
        (6)    the 
plans for the child by these individuals or by the agency seeking custody,
 
        (7)    the 
stability of the home or proposed placement,
 
        (8)    the 
acts or omissions of the parent which may indicate that the existing 
parent-child relationship is not a proper one, and
 
        (9)    any 
excuse for the acts or omissions of the parent.
Holley 
v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors are not 
exhaustive; some listed factors may be inapplicable to some cases; other factors 
not on the list may also be considered when appropriate. C. H., 89 S.W.3d 
at 27. Furthermore, undisputed evidence of just one factor may be sufficient in 
a particular case to support a finding that termination is in the best interest 
of the child. Id. On the other hand, the presence of scant evidence 
relevant to each Holley factor will not support such a finding. Id.
        A 
review of the record in this case supports the trial court’s findings that 
termination of Appellant’s parental rights was in the best interest of M.G. 
and J.J.S. For example, three witnesses testified that living with Appellant 
would place the children in danger of emotional and physical damage. Moreover, 
M.G. testified that since he began living with his foster parent, he was no 
longer physically abused. Dr. McCreary, the psychologist who evaluated 
Appellant, recommended joint counseling “if” the children were returned, but 
did not recommend the family be reunited as asserted by Appellant’s brief. 
McCreary also stated that Appellant had “ a lot of negative things to say 
about her son.” The record shows that Appellant consistently denied abusing 
her children, but instead minimized the significance of any of the incidents the 
children testified about. Alexander-Bird testified that without Appellant 
admitting that her actions endangered her children emotionally and physically, 
Appellant could not be helped by any classes or counseling. The evidence 
supports the trial court’s finding that termination of Appellant’s parental 
rights would be in the best interests of the children. Accordingly, we overrule 
Appellant’s first point.
Conclusion
        Having 
overruled Appellant’s two points on appeal, we affirm the trial court’s 
judgment.
   
   
                                                                  PER 
CURIAM
 
 
 
PANEL 
A: HOLMAN, J., CAYCE, C.J., and SAM J. DAY, J. (Retired, Sitting by Assignment).
 
DELIVERED: 
April 28, 2005


 
NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
To protect the parties involved in this appeal, we identify the children by 
initials only and the Appellant by first name and last initial.  See 
Tex. Fam. Code Ann. § 109.002(d) 
(Vernon 2002).
3.  
The name of the agency has changed to the Texas Department of Family and 
Protective Services effective September 1, 2003.  See Act of June 2, 
2003, 78th Leg., R.S., ch. 198, §§ 1.01(b)(4)(J), 1.27, 2003 Tex. Gen. Laws 
611, 641, 729.  However, because the pleadings and judgment in the trial 
court refer to the Texas Department of Protective and Regulatory Services, for 
the sake of consistency will do likewise in this opinion.
4.  
In part of her second point, Appellant references the bias of the trial court. 
Appellant cites no authority in support thereof.  Therefore, Appellant has 
waived this portion of her issue, and we will not address it.  See Tex. R. App. P. 38.1(h); Shelton v. 
Sargent, 144 S.W.3d 113, 119 (Tex. App.—Fort Worth 2004, pet. denied) 
(holding point may be waived because of inadequate briefing).
5.  
We note that the reporter’s record lists the witness’s name as Alicia 
Alexander-Bird, while the trial court’s findings of facts lists her name as 
Alicia Byrd-Alexander.