**Marcus T. WARNER, Appellant,**

v.

**R.W. HURT, M.D., Appellee.**

**No. C14–90–01098–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

June 4, 1992.

Merry Miller, Houston, for appellant.

Steve Gonzalez, Houston, for appellee.

Before ROBERTSON, SEARS and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

Marcus T. Warner, individually and as executor of the estate of Ruth Flores Hawks, appeals from the trial court's judgment in favor of appellee, R.W. Hurt, M.D., in a medical malpractice action. In three points of error, appellant contends that the trial court erred in admitting a medical expert's testimony and in entering judgment for appellee because the evidence established negligence as a matter of law. Appellant also claims that the jury's failure to find appellee's negligence proximately caused Mrs. Hawks's death was contrary to the great weight and preponderance of the evidence. We affirm.

Ruth Flores Hawks, a sixty-three year old woman, had a twenty year history of facial pain problems when she first consulted appellee on September 4, 1981. Mrs. Hawks had undergone seven prior operations, but none had relieved her facial pain permanently. After discussing several options with appellee, she elected to have him perform a neurological surgical procedure

called a percutanious stereotactic radiofrequency rhizotomy. In this procedure, a needle is inserted through a foramen or opening at the base of the skull and electrical stimulation is applied through the needle. A portion of the specified nerve is burnt through this transmission of heat and the patient experiences pain relief through a loss of sensation. Mrs. Hawks chose this procedure because she had previously undergone it and suffered no facial pain for three years thereafter.

On October 2, 1981, appellee started the procedure by inserting a needle electrode through the side of Mrs. Hawks' face. Appellee then had an x-ray taken to see if the electrode was properly placed through or near the intended foramen at the base of her skull. While awaiting the results, he noticed Mrs. Hawks was not reacting or awakening in the usual manner. As a result, he withdrew the electrode and had Mrs. Hawks taken down the hall for a Cat Scan. When appellee read the x-rays, he saw that the needle had not penetrated the intended foramen site, but had entered in front of the foramen and passed through the base of the skull. The Cat Scan showed scattered subarachnoid blood. Appellee's operative record indicated that the needle puncture had produced bleeding. Mrs. Hawks lapsed into a coma and died on October 6, 1981. The pathologist's autopsy report stated that the cause of death was a subarachnoid hemorrhage. Appellee testified that the autopsy report revealed a vascular malformation in Mrs. Hawks' brain and there were signs of previous leakage from this malformation. Appellee asserts he had no prior knowledge of any vascular malformation before reading the autopsy report.

■ In his first point of error, appellant complains that expert testimony of Dr. William Sweet should have been excluded at trial because he was unable to define the proper standard of care. The determination of whether a particular witness is qualified to testify as an expert is a matter of judicial discretion and the trial court's decision will not be disturbed on appeal unless a clear abuse of discretion is shown. *Milk-*

*ie v. Metni,* 658 S.W.2d 678, 679 (Tex. App.—Dallas 1983, no writ); *Sears v. Cooper,* 574 S.W.2d 612, 615 (Tex.Civ.App.—Houston [14th Dist.] 1978, writ ref'd n.r.e.); *see also* TEX.R.CIV.EVID. 104(a). The test for abuse of discretion is whether the trial court acted without reference to any guiding principles or whether it acted arbitrarily or unreasonably. *Yowell v. Piper Aircraft Corp.,* 703 S.W.2d 630, 634–35 (Tex. 1986); *Daniell v. Citizens Bank,* 754 S.W.2d 407, 409 (Tex.App.—Corpus Christi 1988, no writ). We cannot substitute our judgment for that of the trial court and reverse a discretionary ruling unless the record clearly shows that the trial court disregarded the rights of a party. *Diaz v. Rankin,* 777 S.W.2d 496, 500 (Tex.App.—Corpus Christi 1989, no writ).

In determining whether an expert is qualified to testify, TEX.R.CIV.EVID. 702 provides the following:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

TEX.R.CIV.P. 702. Admissibility of the expert's opinion hinges on whether or not the expert has special knowledge concerning this matter on which his opinion is sought. See Perdue, *The Law of Texas Medical Malpractice* (2nd ed. 1986) 241. The party offering an expert witness has the burden of establishing his qualifications. *Prellwitz v. Cromwell,* 802 S.W.2d 316, 317 (Tex.App.—Dallas 1990, no writ).

The evidence reflects that Dr. Sweet had been a physician with a concentration in neurology and nerve surgery since 1936. After attending Harvard Medical School for two years, he was awarded a Rhodes Scholarship and attended Oxford University in England for two years. While there, Dr. Sweet completed a research degree in physiology of the nerve system. He then returned to Harvard, completed his medical degree, and trained at the University of Chicago in the areas of surgery, neurology,

and nerve surgery. He later became board certified in neurological surgery, psychiatry, and neurology. At the time of trial, he was Senior Neurosurgeon at Massachusetts General Hospital in Boston. Dr. Sweet invented the percutanious rhizotomy procedure and had performed the procedure over 1500 times himself. He authored 460 publications in his field and also received special recognition and honors for his work.

Appellant asserts that Texas law requires that an expert in a medical malpractice case should first state the standard of care for a specific treatment and then recite what procedures the defendant doctor carried out, so that the jury can then determine whether the defendant doctor met the standard of care. Appellant's reliance on *Bauer v. King*, 674 S.W.2d 377, 380 (Tex. App.—Corpus Christi 1984), *rev'd on other grounds*, 688 S.W.2d 845 (Tex.1985), for this premise is misplaced because that court's holding pertains to the substance of an expert's testimony rather than whether the expert was qualified to testify in the first place. It is the burden of the plaintiff to establish the standard of care in a medical malpractice case. *Bauer*, 674 S.W.2d at 380; *see also Bronwell v. Williams*, 597 S.W.2d 542, 546 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.). We find no cases *excluding* the testimony of a defendant's expert witness in a medical malpractice case because the witness did not first state the standard of care. Such a failure may ultimately go to the weight or value of the expert's testimony to the fact finder, but not to its admissibility, or to the qualifications of the witness to testify.

▪ Appellant alleges also that an expert's testimony in a medical malpractice case should be excluded if the expert cannot define the standard of care and refers us to *Stanton v. Westbrook*, 598 S.W.2d 331 (Tex.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.), and *Smith v. Guthrie*, 557 S.W.2d 163 (Tex.Civ.App.—Fort Worth 1977, writ ref'd n.r.e.). Appellant concludes from these cases that a medical expert's testimony should be excluded if the expert cannot establish the standard of

care *by stating what he or she would have done under the same or similar circumstances.* We disagree. Again, it is the plaintiff's burden in a medical malpractice case to establish the standard of care and to prove a violation of that standard. *Stanton*, 598 S.W.2d at 333; *Smith*, 557 S.W.2d at 165. In *Stanton*, we noted that a plaintiff needs to establish a medical standard of care by evidence introduced through a medical expert so that the fact finder can determine whether the doctor's act or omission deviated from the standard of care and constituted negligence. However, we then cited *Smith* for a conclusion exactly opposite to appellant's, which is, that a testifying expert *cannot* establish the standard of care by stating what he would have done under the same or similar circumstances. *Stanton*, 598 S.W.2d at 333. We stand by our prior analysis.

▪ Appellant's arguments do not address the issue raised in his first point of error which is whether Dr. Sweet was originally qualified to testify as an expert. We hold there was no abuse of discretion in admitting Dr. Sweet's expert testimony as it is obvious he is well-qualified in "knowledge, skill, experience, training, or education" pursuant to TEX.R.CIV.EVID. 702. Therefore, we need not discuss appellant's contention that this was fundamental error. Even if the admission of Dr. Sweet's testimony was error, appellant did not show how this testimony could have caused the rendition of an improper verdict. The jury heard enough expert testimony evidence from appellee himself, if they believed it, to justify their verdict. The expert testimony presented by the parties was conflicting, and the jury as fact finder was entitled to resolve it. We find the trial court did not abuse its discretion in permitting Dr. Sweet to testify. This first point of error is overruled.

▪ Appellant argues in his second point of error that the trial court erred in entering judgment for appellee because the evidence established as a matter of law that appellee was negligent in performing the procedure and that his negligence proximately caused Mrs. Hawks' death. Specifi-

cally, appellant claims Dr. Hurt was negligent in misplacing the needle in Mrs. Hawks skull and that this misplacement subsequently caused her death.

In reviewing a "matter of law" challenge, the appellate courts have set out the following test:

A party attempting to overcome an adverse fact finding as a matter of law must surmount two hurdles. First, the record must be examined for evidence that supports the jury's finding, while ignoring all evidence to the contrary. Second, if there is no evidence to support the fact finder's answer, then, the entire record must be examined to see if the contrary proposition is established as a matter of law.

*Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989), *appeal after remand*, 777 S.W.2d 128 (Tex.App.—Houston [14th Dist.] 1989, no writ) (quoting *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex.1982)). The reviewing court must determine whether more than a scintilla of evidence exists to support the trial court's finding when evaluating a properly preserved "no evidence" point of error. *Lewelling v. Lewelling*, 796 S.W.2d 164, 166 (Tex.1990). If the contrary proposition is established conclusively by the evidence, the point of error will be sustained. *Meyerland Community Improvement Ass'n v. Temple*, 700 S.W.2d 263, 267 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

At the conclusion of the evidence in the trial, the following question was submitted to the jury:

### Question One

Did the negligence, if any, of Dr. R.W. Hurt proximately cause the occurrence in question?
ANSWER: "Yes" or "No."
The jury answered "No" to this question.

Applying the first hurdle of the two-prong test set out above in *Sterner*, we need to review the record for evidence that supports the jury's finding in favor of appellee. A doctor can, by his own testimony, establish the requisite standard of medical care by which his actions are judged. *Williams v. Bennett*, 610 S.W.2d 144, 146 (Tex.1980). Appellee's testified that he had performed the procedure as an ordinary reasonable prudent neurosurgeon who had been trained in this specialized surgery and he was not negligent. Appellee testified he exercised ordinary, if not greater than ordinary care, when he did Mrs. Hawks' surgery. He also stated that it has been reported in literature that the electrode can be inserted through one of the other foramens known to exist in the skull base. Additionally, Dr. Sweet testified that appellee was not negligent and had used the proper caution and skill in doing this procedure. He stated that Mrs. Hawks had an abnormal opening in her skull near the foramen ovale which would have been unforeseeable by appellee before the surgery. He confirmed it was not unusual for the needle to not go into the intended spot the first time. It is obvious from looking at the entire record and testimony that there is evidence to support the jury's finding. Therefore, we need not address the second step of the *Sterner* test. Appellant's point of error two is overruled.

■ The remaining issue is appellant's allegation that the trial court erred in entering judgment for appellee because the jury's failure to find that appellee's negligence proximately caused Mrs. Hawks death was contrary to the overwhelming weight and preponderance of the evidence. When reviewing a jury verdict to determine the factual sufficiency of the evidence, the court of appeals must consider and weigh all the evidence and should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *see also Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986). We are not free to substitute our judgment for that of the jury simply because we may disagree with the jury's verdict. *Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex.1988). Appellate courts are not entitled to reverse merely because they conclude that the evidence preponderates toward an affirmative answer. *Id.* at 144. In considering a factual

insufficiency point, the court of appeals must remember the rule that determining the credibility of the witnesses and the weight to be given thereto is within the sole province of the trier of fact. *Nelson v. Jordan*, 663 S.W.2d 82, 86 (Tex.App.—Austin 1983, writ ref'd n.r.e.).

We now turn to the issue of whether the jury's failure to find that appellee's negligence proximately caused Mrs. Hawk's death was so against the overwhelming weight and preponderance of the evidence as to be unjust. Our finding against appellant on the negligence issue renders this issue on proximate cause moot. This is so because the jury's negative answer to Question No. 1, put a dual burden on appellant. By its answer of "no" to the question as to whether the negligence, *if any*, of Dr. Hurt proximately caused the death of Mrs. Hawks, the jury necessarily made either one of two conclusions: Either that Dr. Hurt was not negligent; or he was negligent, but his negligence was not the proximate cause of her death. The appellant then was obligated to prove on appeal that the evidence was insufficient for the jury to make *either* conclusion. Because we have determined the negligence issue against appellants, we do not need to address the proximate cause issue, other than to point out there was also conflicting testimony in that area. This testimony concerned evidence of a prior hemorrhage or leakage in the area of the fatal hemorrhage. There was also evidence of the physical rarity of the foramen in Mrs. Hawk's skull, through which the electrode was inserted. Thus, even assuming arguendo, an affirmative negligence finding by the jury, the proximate cause evidence is also conflicting.

█ This case involved a classic "battle of the experts." Appellant's expert witness, Dr. Cooper, testified that appellee inserted the needle electrode very far anteriorly in a vertical direction so that it improperly entered the base of the skull instead of the proper foramen. He also testified that appellee's failure to employ routine x-rays during the procedure was below the standard of care. Dr. Cooper then concluded that appellee's misplacement of the needle caused a subarachnoid hemorrhage that resulted in Mrs. Hawk's death. However, appellant erroneously claims that neither Dr. Sweet nor appellee disputed Dr. Cooper's testimony. Both Dr. Sweet and appellee gave testimony contradicting Dr. Cooper's conclusions both as to Dr. Hurt's negligence and the proximate cause issue. In view of the conflicting expert witness testimony, a fact issue was created for the jury to resolve. *See Sharpe v. Safway Scaffolds Co. of Houston*, 687 S.W.2d 386, 390 (Tex.App.—Houston [14th Dist.] 1985, no writ).

Even if we as a reviewing court might view the circumstances of this tragic case contrary to the way the jury did, we cannot become a thirteenth juror and substitute our judgment for theirs. In a battle of competing evidence, it is the sole obligation of the jury to determine the credibility of the witnesses and to weigh their testimony. It is the obligation of the respective advocates to persuade them in their decision. And it is our obligation to see that the process was fair and carried out according to the rules. We cannot under any circumstances re-try the case.

For the reasons discussed, we find that appellant has failed to show that the jury's failure to find negligence on the part of appellee was against the great weight and preponderance of the evidence.

We affirm the judgment.