COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-06-406-CV

 

 

ROSE OLMOS HERRERA                                                       APPELLANT

 

                                                   V.

 

MUHAMMAD ASLAM MALIK, M.D.                                         APPELLEES

AND SURGICAL CONSULTANTS OF

FORT WORTH, P.L.L.C.

 

 

                                              ------------

 

           FROM
THE 153RD DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I.  Introduction








In four issues,
Appellant Rose Herrera appeals the jury=s verdict in favor of Appellees Muhammad Malik, M.D. and
Surgical Consultants of Fort Worth, P.L.L.C. 
Because we hold that the testimony of Dr. Malik=s expert on the issue of negligence was admissible and
that the evidence was sufficient to support the jury=s verdict, we affirm the trial court=s judgment.

II.  Factual and Procedural History

In March 2001,
Dr. Malik performed a laparoscopic cholecystectomy (gall bladder removal) on
Herrera.  Dr. Malik recommended the
surgery to treat Herrera=s chronic cholecystitis (gall bladder disease) and
cholelithiasis (gall stones).  A
laparoscopic cholecystectomy is one in which the surgeon views the gallbladder
via a laparoscopeCa small cameraCinserted through a small incision in the abdomen.  The surgical instruments used in the surgery
are also inserted through small incisions. 
Alternatively, an open cholecystectomy is one in which the gallbladder
is removed through a single incision in the abdomen; the incision used is
larger than the incision in a laparoscopic procedure.  Prior to the surgery, Herrera signed consent
forms acknowledging the possibility that there might be exploration with
cholangiograms (contrast x-rays of the biliary system) or that the surgery
could be changed to an open procedure if necessary.  








During the course
of the surgery, Dr. Malik removed Herrera=s gallbladder and placed surgical clips on various ducts
and blood vessels inside Herrera=s abdomen to prevent fluid or blood from entering the
abdominal cavity.  He also performed an
intraoperative cholangiogram (AIOC@)  During the IOC,
still photographs were taken, and Dr. Malik also observed the dye flow on a
television monitor during fluoroscopy. 
Despite using the IOC, Dr. Malik mistakenly placed a surgical clip on
Herrera=s common bile duct instead of on her cystic duct.  

Shortly after the
surgery, Herrera began experiencing symptoms of jaundice.  She was hospitalized again, and Dr. Thomas
Dewar, a gastroenterologist, examined Herrera=s bile duct and discovered that it was blocked by a
surgical clip.  Dr. Malik referred
Herrera to Dr. Thomas Shires, whom he considered a more experienced surgeon in
the area of biliary repair, for removal of the clip.  Dr. Shires operated on Herrera and found a
surgical clip on the bile duct that was preventing the flow of bile into the
intestine.  

Dr. Malik and
Herrera both presented expert testimony regarding Dr. Malik=s actions during the surgery and whether those actions
fell below the standard of care.  At
trial, Dr. Malik was called by Herrera as her first witness and again as an
expert for the defense.  Herrera also
produced testimony from Dr. Gail Burbridge, and Dr. Morris Franklin testified
for Dr. Malik.  

The jury found
that Dr. Malik was not negligent in causing the injuries to Herrera.  This appeal followed.

 

 

 








III.  Evidentiary Ruling

Because Herrera=s third issue concerns the admissibility of testimony at
trial, we consider it before addressing the sufficiency of the evidence.[2]  In her third issue, Herrera argues that the
trial court erred by admitting Dr. Franklin=s testimony on the issues of the applicable standard of
care, Dr. Malik=s lack of negligence, and a lack of a causal relationship
between Dr. Malik=s compliance with the standard of care and Herrera=s injuries.  The
crux of her arguments under this issue is that Dr. Franklin should not have
been allowed to testify on these matters because Dr. Malik=s counsel failed to lay the proper predicate.  She asserts that Dr. Franklin first had to
testify as to the applicable standard of care but that his testimony on this
issue was overly broad and nonspecific, conclusory, and speculative. 








We review the
trial court=s admission of evidence for an abuse of discretion.[3]  In a trial on medical malpractice claims, the
plaintiff bears the burden of establishing the standard of care.[4]  This court has already held that the failure
of an expert to state an opinion as to the applicable standard of care does not
require the exclusion of the expert=s testimony.[5]  The failure to testify as to the standard of
care Amay ultimately go to the weight or value of the expert=s testimony to the fact finder, but not to its
admissibility.@[6]  Furthermore, an
expert may give an opinion on an ultimate issue Aif a predicate is laid to show that the expert knows the
proper legal definition in the question.@[7]  All that was
required in terms of predicate before Dr. Franklin could testify on a mixed
question of law and fact was that he be given the lawCin this case, the definitions of the legal terms in the
questions being asked of himCso that he could apply those definitions to the facts and
state his opinion on the matter.  Dr.
Malik=s counsel advised Dr. Franklin that 

Negligence, when used with respect to the conduct of defendant,
. . . means the failure to use ordinary care, that is, the failure to
do that which a general surgeon of reasonable and ordinary prudence would have
done under the same or similar circumstances, or doing that which a general
surgeon of reasonable and ordinary prudence would not have done under the same
or similar circumstance[s].

 








Ordinary
care, when used with respect to the conduct of defendant,
. . . means that degree of care which a general surgeon of
reasonable and ordinary prudence would exercise under the same or similar
circumstances.

Dr. Franklin was thus given proper
legal definitions of Anegligence@ and Aordinary care.@[8]  Because Dr.
Franklin was given the proper legal definition of Anegligence@ and Aordinary care,@ he could then give his opinion as to whether Dr. Malik
was negligent based on those definitions.[9]  








Finally, Herrera
argues that Dr. Franklin=s testimony Aon the subject of a lack of any causal relationship
between Dr. Malik=s alleged compliance with the applicable standard of
medical care and the injuries, harm, and damages of Herrera were not admissible
for the reasons set forth above in [Herrera=s] brief.@  Dr. Franklin did
not testify that Dr. Malik=s misplacement of the clip did not cause any harm or
injury to Herrera; he stated only that Dr. Malik complied with the standard of
care and that his actions during the surgery did not constitute
negligence.  We overrule this argument.

For the reasons
stated above, we cannot say the trial court abused its discretion by admitting Dr. Franklin=s expert testimony. We overrule Herrera=s third issue.

IV.  Legal and Factual
Sufficiency

In Herrera=s first issue, she argues that the jury=s finding that Dr. Malik=s negligence, if any, did not proximately cause her
injuries is against the great weight and preponderance of the evidence and that
the evidence established as a matter of law that Dr. Malik=s negligence was a proximate cause of Herrera=s injury.  

A.  Standard of Review








We may sustain a
legal sufficiency challenge only when (1) the record discloses a complete
absence of evidence of a vital fact; (2) the court is barred by rules of law or
of evidence from giving weight to the only evidence offered to prove a vital
fact; (3) the evidence offered to prove a vital fact is no more than a mere
scintilla; or (4) the evidence establishes conclusively the opposite of a vital
fact.[10]  In determining whether there is legally
sufficient evidence to support the finding under review, we must consider
evidence favorable to the finding if a reasonable fact-finder could and
disregard evidence contrary to the finding unless a reasonable fact-finder
could not.[11]  If a party is attacking the legal sufficiency
of an adverse finding on an issue on which the party had the burden of proof at
trial, and there is no evidence to support the finding, we review all the
evidence to determine whether the contrary proposition is established as a
matter of law.[12]








When reviewing an
issue asserting that a finding is Aagainst the great weight and preponderance@ of the evidence, we must consider and weigh all of the
evidence and set aside the finding only if the evidence is so weak or the
finding is so contrary to the great weight and preponderance of the evidence as
to be clearly wrong and unjust.[13]  When conducting a factual sufficiency review,
a court of appeals must not merely substitute its judgment for that of the
trier of fact.[14]  The trier of fact is the sole judge of the credibility
of witnesses and the weight to be given to their testimony.[15]

B.  Analysis








A plaintiff in a
medical malpractice case is required to prove by a preponderance of the
evidence that the defendant=s negligence proximately caused his injuries.[16]  To do this, the plaintiff must prove four
elements: (1) a duty by the physician to act according to applicable standards
of care; (2) a breach of the applicable standard of care; (3) an injury; and
(4) a causal connection between the breach and the injury.[17]  The standard of care is the threshold issue
that a plaintiff must establish before the fact-finder determines if the
defendant doctor deviated from the standard of care to a degree that
constitutes negligence.[18]  As a general rule, expert testimony is
required to establish the governing standard of care and whether that standard
has been breached.[19]  In resolving competing expert testimony, it
is the sole prerogative of the jury to determine the weight and credibility of
the witnesses, the obligation of the respective advocates to persuade them, and
this court=s obligation Ato see that the process was fair and carried out according
to the rules.@[20]

The evidence
presented during the trial clearly established that Dr. Malik  erroneously placed a surgical clip on Herrera=s common bile duct, or hepatic duct, when he thought he
was placing it on her cystic duct.  The
issue that the jury had to decide was whether that error rose to the level of
negligence, thus making Dr. Malik liable for any damages proximately caused by
the misplaced surgical clip.  








Herrera argues
that she established Dr. Malik=s negligence as a matter of law through Dr. Burbridge=s testimony that under the applicable standard of care,
Dr. Malik should have properly identified Herrera=s cystic duct prior to placing the clip on the duct,
should have been aware of difficulties in visualizing the anatomical structures
in Herrera=s abdomen, should have performed an IOC, should have
realized the cystic duct could not be visualized on the IOC, and should have
converted to an open procedure and avoided injury to her common hepatic
duct.  She also argues that the evidence
put on by Dr. Malik was factually insufficient to support the jury
verdict.  

Dr. Franklin=s and Dr. Malik=s testimony is directly contrary to Dr. Burbridge=s testimony that Dr. Malik=s failure to convert to an open procedure and his
misplacement of the clip constituted negligence.  Dr. Malik testified as to the applicable
standard of care with respect to locating the common bile duct in relation to
the cystic duct:

A.     Identification of bile
duct is not a standard of care. 
Awareness of where bile duct is standard of care.  Identification where I would go and peel the
overlying tissue in order to find out where common bile duct is, that would be
dangerous.  It is contraindicated and it
would be a violation of standard of care. 
So my awareness is essential to know approximately where the bile duct
may be under all this tissue.

 

. . . . 

 

. . . . 

 

Q.     [Herrera=s counsel] All right.  So
what you=re saying is the standard of reasonable and prudent surgical care
in Mrs. Herrera=s surgery was to beCto identify; that is, actually see through the scope the
gallbladder, the neck of the gallbladder and the cystic duct, and then be aware
of where the common bile duct was located?

 

A.     Yes.

 








He further testified that he saw the
portion of the cystic duct that he needed to see in order to identify the
cystic duct.  He stated that the cystic
duct was short and about the size of a small matchstick; he performed an IOC to
be certain that the structure identified was in fact the cystic duct, and
although the cystic duct was not visible in the IOC results introduced at
trial, which were still photographs, he could see the cystic duct during
fluoroscopy.  Once he had completed the
IOC, he knew that the clip he had placed to hold the catheter was on the cystic
duct; he was Aabsolutely certain@ that he had identified the cystic duct.  According to his testimony, if he had at that
point in the surgery misidentified the cystic duct, he would not have been able
to see the dye flowing in the lower part of the duct system.  He also testified that he had identified the
cystic duct at three separate points during the surgery.








Dr. Malik could
not account for the subsequent misplacement of the permanent surgical clip other
than by conjecture.  He stated that prior
to cutting the duct, he pulled out the catheter, and to do that, he took off
the clip; he then put three clips on the area before cutting the duct.  He stated that in choosing where to place the
permanent clips, his Adeduction@ was that he would put the permanent clips where the clip
holding the catheter had been Abecause [he] knew that that clip did not impinge or
encroach on the bile duct, so [his] assumption was that if [he] used the same
location to put [the] permanent clips that [he] would be safe.@

As to his
decision not to convert to an open procedure, he stated that the chances of
avoiding putting the clip on her common bile duct would not have been better if
he had converted to an open procedure. 
He stated that although failing to attempt to identify the cystic duct would
be a breach of the standard of care, misidentifying the duct is not.

Dr. Malik also
testified that injury to the common bile duct is a known risk of the surgery
and that he discussed that fact with Herrera prior to the surgery.  He referred to plaintiff=s exhibit 18, a booklet listing the risks and
complications of the procedure and specifically including injury to the common
bile duct as a risk.  He stated that he
explained the procedure to Herrera using the booklet and then gave it to
her.  He answered in the affirmative when
asked by Herrera=s counsel if he believed that Athat part of the booklet referred to the risk of injury to
the structures in the common bile duct that could occur despite reasonable and
prudent surgical technique,@ and if that is what he intended for Herrera to
believe.  The consent form signed by
Herrera before her operation also listed injury Ato the tube between the liver and the bowel@ as a risk of the surgery, which Dr. Malik testified
referred to a risk of injury to the structures in the common bile duct.








During Dr.
Franklin=s testimony, Herrera=s counsel went over Dr. Franklin=s extensive qualifications in great detail, including
discussion of the numerous articles that he has authored; the four to six
thousand laparoscopic gallbladder surgeries he has performed; and all the
places in the world he has traveled to give presentations on laparoscopic
surgeries, some of which specifically included topics on how to prevent biliary
tract injuries during laparoscopic gallbladder surgery.  Herrera=s counsel questioned Dr. Franklin on his opinions about
whether  Dr. Malik should have converted
the surgery to an open procedure, his review of Herrera=s medical records, the complications and conditions
associated with surgery, and Dr. Malik=s technique and decisions during Herrera=s surgery.  Dr.
Franklin testified that even though he performs IOCs, sometimes the cystic duct
cannot thereby be identified, but even so, he does not always then convert to
an open procedure.  He stated that
converting to an open procedure will A[a]bsolutely not@ guarantee that there will not be injury to the common
duct and elaborated that A[i]n actual fact, one can see better laparoscopically than
open.@

Dr. Franklin gave
his opinion on what should be done by the surgeon performing a laparoscopic
cholecystectomy in a step-by-step manner from the beginning to the end of the
surgery.  Dr. Franklin then gave his
opinion that Dr. Malik was not negligent:








A.     Based on review of the
records, based on review of the operative report, many years of experience in
the way we teach the technique, I saw no departure whatsoever from the standard
of care, nor of negligence.

 

Q.     Do you have an opinion
as to whether or notCusing these definitions of negligence and ordinary care, as to
whether or not Dr. Malik was negligent in not converting this laparoscopic
procedure to an open procedure?

 

. . . . 

 

A.     In my opinion,
no.

 

Q.     Why?

 

. . . . 

 

A.     Because as I read the records, including
the op note, I felt that he acted as a prudent and ordinary surgeon would act
and there was no indication to convert to open.

He further testified that he himself
had injured the common bile duct of two patients in the past after
misidentifying the cystic duct and that he still met the standard of care.  He testified that if Dr. Malik was in error
in identifying the cystic duct, it was not in violation of reasonably prudent
general surgery standards under the circumstances.








When asked if the
biliary tract injury rate in open procedures is significantly less than in
laparoscopic procedures overall, taking into account all skill levels of
operators, Dr. Franklin testified that he did not know of any scientific study
that has shown Aany difference at all,@ and based on anecdotal evidence from Amany discussions at many meetings,@ that at the time of trial the rates were Aalmost exactly the same.@  Dr. Franklin later
in his testimony stated that the incidence of injury to the bile duct in an
open procedure was three injuries per one thousand surgeries, in laparoscopic
procedures, four and a half injuries per one thousand surgeries.  When asked about Herrera=s position that in converting from a laparoscopic
procedure to an open procedure, a surgeon could use sutures rather than clips
to prevent the misidentification and misclamping off of the common duct, he
disagreed with that position and explained that A[i]n the old days,@ before surgeons had reliable clips and sutures were used
instead, A[W]e still had an incidence of common bile duct injury of
about 0.3 percent . . . .  So
using sutures doesn=t immune one from having an injury in the main bile duct.@








In response to a
question from the jury about the feasibility of taking out all the surrounding
connective tissue to be able to expose the entire cystic duct, he testified
that A[m]ost people do not recommend dissecting the duct
entirely out because this is where we get into problems.  We get tears in the main bile duct, which may
or may not be seen, and will lead to a postoperative leak.@  Finally, Herrera=s counsel asked Dr. Franklin a question from the jury, who
wanted to knowCbased on Dr. Malik=s testimony that the difficulty of the procedure performed
on Herrera was above average, that Herrera=s cystic duct was shorter than normal, and that the clip Alikely@ went over the connective tissues and could not be
visualized on the cystic ductCwhether Dr. Franklin would have done anything more to
verify that the common duct was not clipped if he were operating on his wife or
other loved one.  Dr. Franklin answered, AI would have done exactly what he did, which was dissect
out what I thought was the cystic duct and place the clip accordingly.@

Although Herrera=s expert, Dr. Gail Burbridge, testified that, given the
many warning signs and difficulty in identifying the structures in Herrera, Dr.
Malik should have converted to an open procedure and that his failure to do so
violated the standard of care, this testimony was controverted by Dr. Franklin
and Dr. Malik.  We hold that the evidence
offered by Dr. Malik at trial was more than a scintilla and that Herrera=s evidence did not establish Dr. Malik=s negligence as a matter of law.








Further, the jury,
as the sole judge of the witnesses= credibility, was free to evaluate and give more weight to
Dr. Malik=s and Dr. Franklin=s opinions on the standard of care.[21]  Dr. Malik=s and Dr. Franklin=s testimony as to Dr. Malik=s actions during surgery and their statements that these
actions met the applicable standard of care, Dr. Franklin=s statements that he would not have done anything
different than what Dr. Malik did and that he also on two occasions had injured
a patient=s bile duct even when meeting the standard of care, and
the evidence that injury to the bile duct is a known risk of the procedure even
when a surgeon meets the applicable standard of care all support the jury
finding that Dr. Malik=s error did not rise to the level of negligence.  The evidence supporting the jury=s finding is not so weak or the findings so contrary to
the great weight and preponderance of the evidence as to be clearly wrong or
unjust.[22]  Because the evidence is both legally and
factually sufficient to support the jury finding that Dr. Malik was not
negligent, we overrule Herrera=s first issue.

Herrera=s second issue relates to the jury=s answer on the damages question.  Her fourth issue relates to the trial court=s refusal to submit some of her requested definitions with
respect to the damages question.  Because
we have held that the evidence supports the no-negligence finding, we overrule
Herrera=s second and fourth issues as moot.[23]

 

 








V.  Conclusion

Having overruled
each of Herrera=s four issues, we affirm the judgment of the trial court.

 

LEE ANN DAUPHINOT

JUSTICE

 

PANEL:  DAUPHINOT, HOLMAN, and WALKER, JJ.

DELIVERED: August 7, 2008











[1]See Tex. R. App. P. 47.4.





[2]See
Coastal Transp. Co. v. Crown Cent. Petroleum Corp., 136
S.W.3d 227, 232 (Tex. 2004) (affirming the rule that incompetent evidence, even
if admitted without objection, cannot support a judgment).





[3]Horizon/CMS
Healthcare Corp. v. Auld, 34 S.W.3d 887, 906 (Tex. 2000).





[4]Warner
v. Hurt, 834 S.W.2d 404, 407 (Tex. App.CHouston [14th Dist.] 1992, no
writ). 





[5]Shelton
v. Sargent, 144 S.W.3d 113, 125 (Tex. App.CFort
Worth 2004, pet. denied).  





[6]Id.  





[7]Lawrence
v. City of Wichita Falls, 122 S.W.3d 322, 328 (Tex. App.CFort
Worth 2003, pet. denied).  





[8]Chambers
v. Conaway, 883 S.W.2d 156, 158 (Tex. 1993) (stating that Athe
physician has a duty to act as would a physician of reasonable and ordinary
prudence under the same or similar circumstances@ and
that Aa
physician=s
failure to so act constitutes a breach of that duty@); Birchfield
v. Texarkana Mem=l
Hosp., 747 S.W.2d 361, 366 (Tex. 1987) (considering definition of Aordinary
care@ as
applied to a hospital and holding that defining Aordinary
care@ as A>that
degree of care that a hospital of ordinary prudence . . .would
have exercised under the same or similar circumstances=@ was
proper).





[9]See Isern
v. Watson, 942 S.W.2d 186, 193B94 (Tex. App.CBeaumont
1997, pet. denied) (holding that expert doctor did not lack the proper legal
concepts to testify on the defendant doctor=s negligence because the
expert was provided with the proper legal definition of negligence).





[10]Uniroyal
Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex.
1998), cert. denied, 526 U.S. 1040 (1999); Robert W. Calvert, ANo
Evidence@ and
AInsufficient
Evidence@
Points of Error, 38 TEX. L.
REV. 361, 362B63
(1960).





[11]City
of Keller v. Wilson, 168 S.W.3d 802, 807, 827 (Tex. 2005).





[12]Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001); Sterner
v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989).





[13]Dow
Chem. Co., 46 S.W.3d at 242; In re King=s
Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). 





[14]Golden
Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex.
2003). 





[15]Id.





[16]Duff
v. Yelin, 751 S.W.2d 175, 176 (Tex. 1988). 





[17]Denton
Reg=l
Med. Ctr. v. LaCroix, 947 S.W.2d 941, 950 (Tex. App.CFort
Worth 1997, writ dism=d by
agr.). 





[18]See
id. 





[19]See
Hood v. Phillips, 554 S.W.2d 160, 165B66
(Tex. 1977); LaCroix, 947 S.W.2d at 950.





[20]Welch
v. McLean, 191 S.W.3d 147, 160 (Tex. App.CFort
Worth 2005, no pet.) (quoting Warner v. Hurt, 834 S.W.2d 404, 409 (Tex.
App.CHouston
[14th Dist.] 1992, no writ)).





[21]See
Jackson, 116 S.W.3d at 761.





[22]See
Dow, 46 S.W.3d at 242.





[23]See TEX. R. APP. P.
47.1.